**RECORD NO. 09-5061**

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## GREGORY ROLAND PRUESS,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

## REPLY BRIEF OF APPELLANT

Claire J. Rauscher
Executive Director
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.

*Ann L. Hester
Peter Adolf
Assistant Federal Defenders
129 West Trade Street, Suite 300
Charlotte, North Carolina  28202
(704) 374-0720

*Counsel for Appellant*
*\*Counsel of Record*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ................................................................................................ 1

    I.      Regulations Limiting Non-Violent Felons' Second-Amendment Right to Bear Arms Are Not Exempt from Constitutional Means-End Analysis ........................................................................ 1

    II.     Non-Violent Felons Possess an Individual Right to Bear Arms, and Strict Scrutiny Applies Under the Equal Protection Clause ........... 7

    III.   *Heller* Overruled the Portion of the Supreme Court's *Lewis* Decision Applying Rational Basis Review to a Firearms Ban Based on an Invalid Conviction ........................................................ 9

    IV.   The Government Misapprehends the Facts Surrounding Pruess' Prior Convictions ................................................................................ 10

        A.     All of Pruess' Prior Convictions Were the Result of His Initial, Invalid Conviction ........................................................ 10

        B.     Evidence in the Record Demonstrates that Pruess Relied on Legal Advice that His Post-Conviction Motions Attacking His 1996 Conviction Would Invalidate His Subsequent Pleas ..................................................................... 11

        C.     Pruess' 1997 Indictment Indicates that 60 mm Mortar Rounds are Explosives, Not Destructive Devices .................... 11

CONCLUSION ............................................................................................ 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anders v. California*,
    386 U.S. 738 (1967)...............................................................................3

*Heller v. District of Columbia*,
    128 S. Ct. 2783 (2008)...................................................................*passim*

*Lewis v. United States*,
    445 U.S. 55 (1980)............................................................................9, 10

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010).........................................................................2

*Scarborough v. United States*,
    431 U.S. 563 (1977)..............................................................................7

*United States v. Bean*,
    537 U.S. 71 (2002)................................................................................3

*United States v. Brunson*,
    292 F. App'x 259 (4th Cir. 2008)......................................................3, 5

*United States v. Chester*,
    367 F. App'x 392 (4th Cir. 2010).......................................................4, 5

*United States v. McRobie*,
    2009 WL 82715 (4th Cir. Jan. 14, 2009)........................................3, 4, 5

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010), *cert. denied*,
    2010 WL 2801462 (Oct. 4, 2010)........................................................8

*United States v. Yancey*,
      ___ F.3d ___, 2010 WL 3447736 (7th Cir. Sept. 3, 2010)..........................1, 5

*United States v. Williams*,
      616 F.3d 685 (7th Cir. 2010) ...............................................................5, 6, 8, 9

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I...............................................................................................6

U.S. CONST. amend. II..................................................................................*passim*

U.S. CONST. amend. V......................................................................................8, 12

## STATUTES

18 U.S.C. § 922(g) ...................................................................................................5

18 U.S.C. § 922(g)(1)..........................................................................................1, 6, 9

18 U.S.C. § 922(g)(3).............................................................................................5

18 U.S.C. § 922(g)(4)..............................................................................................4

18 U.S.C. § 922(g)(9)..............................................................................................4

18 U.S.C. § 925(c) ..................................................................................................2

26 U.S.C. § 5861(e) ..............................................................................................11

## OTHER AUTHORITY

Firearm Owners' Protection Act, PL 99-308, 100 Stat. 449 (May 19, 1986) ...........3

## ARGUMENT

**I.   Regulations Limiting Non-Violent Felons' Second-Amendment Right to Bear Arms Are Not Exempt from Constitutional Means-End Analysis.**

The government concedes that "in *Heller*, the Supreme Court held that the Second Amendment provides an individual with a right that 'belongs to all Americans' to possess and carry firearms for defensive purposes."  G. Br. at 11-12. And although it acknowledges that the Supreme Court in *Heller v. District of Columbia*, 128 S. Ct. 2783 (2008), rejected a rational-basis review for regulations limiting Second Amendment rights, G. Br. At 13-14, the government never argues that the lifetime ban on non-violent felons' possession of firearms satisfies either intermediate or strict scrutiny.  Instead, it relies on *dicta* in *Heller*, along with the Seventh Circuit's decision in *United States v. Yancey*, ___ F.3d ___, 2010 WL 3447736 at *3 (7th Cir. Sept. 3, 2010), for the proposition that "[b]ecause the prohibition against felons' possession of firearms is longstanding and because even nonviolent felons are more likely 'to engage in illegal and violent gun use' that non-felons, . . . § 922(g)(1) may be applied, consistent with the right to bear arms protected by the Second Amendment, to defendants whose prior felony convictions were nonviolent."  G. Br. 17 .

This argument is flawed for two reasons.  First, the Supreme Court's *dicta* in *Heller*, rather than exempting regulations banning felons' possession from constitutional means-end scrutiny, merely identified "longstanding prohibitions on

1

the possession of firearms by felons" as "presumptively lawful."  128 S. Ct. at

2816-17, 2817 n.26.  But at the same time, the Court recognized that even

"longstanding" regulations were not exempt from constitutional means-end

analysis and would have to be justified, explaining:  "there will be time enough to

expound upon the historical justifications we have mentioned if and when those

exceptions come before us."  *Id.* at 2821.

Second, as Pruess demonstrated in his Opening Brief, the ban on non-violent

felons' possession of firearms is not longstanding, and the government offers no

argument to the contrary, except to say that "Defendant notes that the prohibition

against possession of firearms by all felons, including nonviolent felons, was not

enacted until 1968."  See Op. Br. 24-26;  G. Br. 16.  The government goes on to

argue that "[t]he same is true of the ban against possession of firearms by the

mentally ill, however,  . . .  yet the Supreme Court made clear that this prohibition

remains constitutional."  G. Br. 16 (citing *McDonald v. City of Chicago*, 130 S. Ct.

3020, 3047 (2010);  *Heller*, 128 S. Ct. at 2816-17).  This argument

mischaracterizes both Pruess' argument and the history of federal laws limiting

non-violent felons' possession of firearms.

As Pruess explained in his Opening Brief, while the ban on felons'

possession of firearms was enacted in 1968, at the same time, Congress enacted a

provision---18 U.S.C. § 925(c)---providing nonviolent felons with a means of

2

restoring their firearm rights.  See Op. Br. at 25.  The restoration provision was

effective until 1992, when Congress began using annual budget appropriations

legislation to prevent any firearms right restoration from occurring.  *United States*

*v. Bean*, 537 U.S. 71, 74-75 (2002).  Furthermore, felons' possession of

ammunition was not banned at all until 1986, when Congress enacted the Firearm

Owners' Protection Act.  PL 99-308, 100 Stat. 449 (May 19, 1986).  And Pruess

was charged with possessing ammunition, not firearms.  The ban on nonviolent

felons' possession of ammunition cannot be considered "longstanding," even if a

regulation passed in 1968 would be.

In support of its argument that <u>no</u> constitutional scrutiny is required for the

ban on non-violent felons' possession of firearms, the government cites two

unpublished opinions of this Court:  *United States v. Brunson*, 292 F. App'x 259

(4th Cir. 2008), and *United States v. McRobie*, 2009 WL 82715 (4th Cir. Jan. 14,

2009).  Neither of these cases applies to a regulation banning *non-violent felons'*

possession of firearms, however.

In *Brunson*, which was filed with a disclaimer by defense counsel that the

appeal contained no meritorious issues under *Anders v. California*, 386 U.S. 738

(1967), the defendant had three prior convictions for violent offenses:  one

conviction of resisting arrest with a deadly weapon and two convictions of assault

and battery of a high and aggravated nature.  2008 WL 4180057 at *1.  Pruess'

criminal history, unlike Brunson's, is non-violent, and the complete ban on non-violent felons' possession of ammunition is not longstanding like the ban on other felons' firearm possession.

*McRobie*, as the government acknowledges, was convicted of possession of a firearm by a person committed to a mental institution in violation of 18 U.S.C. § 922(g)(4). 2009 WL 82715 at *1; G. Br. 16. As discussed above, the total ban on firearms possession by this class of individuals was adopted in 1968, not in 1992 like the effective lifetime ban on non-violent felons' possession of firearms and ammunition.

Furthermore, in *United States v. Chester*, involving a Second-Amendment challenge to the prohibition on domestic violence misdemeanants' possession of firearms under 18 U.S.C. § 922(g)(9), this Court vacated and remanded because the district court failed to undertake the necessary means-end analysis in rejecting the defendant's Second-Amendment claim. 367 F. App'x 392, 397 (4th Cir. 2010). The Court noted that the prohibition on domestic violence misdemeanants was enacted in 1996, just four years after Congress effectively eliminated the firearms restoration provision applicable to non-violent felons. *Id.* at 395 n.4. And the court required application of constitutional means-end analysis even though Chester was not "law-abiding." *Id.* at 398.

4

Under *Brunson*, *McRobie*, and *Chester*, even though Pruess is not law-abiding because of his record of non-violent felonies, the lifetime ban on his possession of firearms and ammunition is based on relatively recent legislation and is not one of the "longstanding" prohibitions on firearms possession subject to the presumption of legality referred to by the Supreme Court's dicta in *Heller*. Constitutional means-end scrutiny is required.

*United States v. Yancey*, the Seventh Circuit case cited by the government, does not support a contrary conclusion. In *Yancey*, the court addressed the ban on firearms possession by a person "'who is an unlawful user of or addicted to any controlled substance.'" 2010 WL 3447736 at *1 (quoting 18 U.S.C. § 922(g)(3)). Even though this legislation was passed in 1968 at the same time that Congress passed legislation banning firearms possession by the mentally ill---one of the limitations referred to by *Heller* dicta as presumptively valid---the Seventh Circuit still analyzed this firearms ban under intermediate constitutional scrutiny, evaluating "whether the government had made a strong showing that the challenged subsection of § 922(g) was substantially related to an important governmental objective." *Id.* at *2.

In fact, in *United States v. Williams*, an opinion issued one month before *Yancey* and decided by a panel that included Associate Justice (Retired) Sandra Day O'Connor, the Seventh Circuit specifically addressed a challenge to section

5

922(g)(1), subjected that restriction to intermediate constitutional scrutiny, and

recognized that "§ 922(g)(1) may be subject to an overbreadth challenge at some

point because of its disqualification of all felons, including those who are non-

violent." 616 F.3d 685, 692-93 (7th Cir. 2010). While agreeing "that some

categorical bans on firearm possession are constitutional," the court held that

> the government does not get a free pass simply because Congress has
> established a "categorical ban"; it still must prove that the ban is
> constitutional, a mandate that flows from *Heller* itself. *Heller* referred
> to felon disarmament bans only as "presumptively lawful," which, by
> implication, means that there must exist the possibility that the ban
> could be unconstitutional in the face of an as-applied challenge.
> Therefore, putting the government through its paces in proving the
> constitutionality of § 922(g)(1) is only proper.

*Id.* at 692. The court then held that intermediate scrutiny applied, and that "the

government has the burden of demonstrating that its objective is an important one

and that its objective is advanced by means substantially related to that objective."

*Id.* The government satisified that burden in Williams' case, because Williams

was a violent felon, having been convicted previously of a felony robbery where he

beat the victim "so badly that the victim required sixty-five stitches." *Id.* at 693.

Here, the government has made no attempt to justify the ban on non-violent

felons' firearm possession under any level of scrutiny. *Heller* itself suggests strict

scrutiny applies, holding that the Second Amendment right to keep and bear arms

is a fundamental right and comparing that right to First Amendment rights. Op. Br.

27-28. But even under intermediate scrutiny, the lifetime ban on non-violent

6

felons' possession of firearms and ammunition fails.  As discussed in Pruess'

Opening Brief, the stated Congressional purpose in enacting the ban on felons'

firearm possession was to keep firearms out of the hands of people "whose prior

behaviors have established their violent tendencies," *Scarborough v. United States*,

431 U.S. 563, 573 (1977), and the ban was originally accompanied by a provision

permitting non-violent felons to obtain restoration of their gun rights.  Op. Br. 30-

34.  The government has offered no empirical evidence to support a conclusion

that nonviolent felons in possession of firearms pose an increased danger to the

public, and Congress has demonstrated that it is able to craft legislation

distinguishing between violent and non-violent felons.  *Id.*

## II.     Non-Violent Felons Possess an Individual Right to Bear Arms, and Strict Scrutiny Applies Under the Equal Protection Clause.

The government responds to Pruess' Equal Protection claim by arguing that

the right to possess a firearm "cannot  be said to be a fundamental right of a

convicted felon, even a felon whose prior convictions were nonviolent."  G. Br. 17.

The government's argument on this point is contrary to its concession that "[i]n

*Heller*, the Supreme Court held that the Second Amendment provides an individual

with a right that 'belongs to all Americans' to possess and carry firearms for

defensive purposes."  G. Br. 11 (citing *Heller*, 128 S. Ct. at 2791, 2793, 2797).

Nevertheless, according to the government, the ban on nonviolent felons'

possession of firearms and ammunition need only be "rationally related to the

7

legitimate governmental interest of public safety." G. Br. 18. In support of this argument, the government cites *United States v. Vongxay*, 594 F.3d 1111, 1118-19 (9th Cir. 2010), *cert. denied*, 2010 WL 2801462 (Oct. 4, 2010). *Id.* While the Ninth Circuit did hold in *Vongxay* that "felons are categorically different from the individuals who have a fundamental right to bear arms," 594 F.3d at 1115, that conclusion was incorrect, because it omitted the necessary step of constitutional means-end analysis---a step which the *dicta* in *Heller* did not dispense with.

As explained in the preceding section of this brief, and as explained by the Seventh Circuit in *Williams*, 616 F.3d at 692-93, the Supreme Court's *dicta* in *Heller* does not mean that non-violent felons *per se* have no Second Amendment rights or that the categorical bans on firearm possession listed in *Heller* are exempt from constitutional means-end analysis. "*Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." *Williams*, 616 F.3d at 692. For the same reasons that the ban on nonviolent felons' possession of firearms and ammunition fails constitutional scrutiny for due process purposes, it also fails under the Equal Protection Clause of the Fifth Amendment. *See* Op. Br. 34-35.

8

### III.  *Heller* Overruled the Portion of the Supreme Court's *Lewis* Decision Applying Rational Basis Review to a Firearms Ban Based on an Invalid Conviction.

The government argues that, because each of Pruess' prior felony convictions remains valid, under the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55 (1980), his conviction of possessing ammunition in violation of § 922(g)(1) is not constitutionally suspect.  G. Br. 19.  The government's position is grounded in its argument that convicted felons have no Second Amendment right to bear arms under *Heller*.  *Id.*  As explained in Section I of this brief, that interpretation misunderstands the meaning of the Court's *dicta* in *Heller*.  While certain categorical exclusions from the right to bear arms are "presumptively" reasonable under *Heller*, *Heller* does not exempt any categorical firearms bans from constitutional means-end analysis.  *See Williams*, 616 F.3d at 692.  Consequently, the government's premise that convicted felons *per se* have no Second Amendment rights is false.

Furthermore, as the *Heller* Court specifically noted, the challenge to the firearm ban in *Lewis* was not based on the Second Amendment.  128 S. Ct. at 2816 n.25.   The Court in *Heller* noted that the references to the Second Amendment in *Lewis* were dictum contained in a footnote and held that "[i]t is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue

9

and was not argued." *Id.* Consequently, to the extent that *Lewis* ever had anything to say about whether a firearms ban based on an invalid conviction violates the Second Amendment, *Heller* unequivocally rejected it. After *Heller*, *Lewis* provides no support for applying rational-basis review to a firearms ban that applies even if the underlying conviction is invalid. Instead, a reviewing court must apply strict scrutiny or, at the very least, intermediate scrutiny.

**IV.    The Government Misapprehends the Facts Surrounding Pruess' Prior Convictions.**

**A.    All of Pruess' Prior Convictions Were the Result of His Initial, Invalid Conviction.**

The government argues that, although Pruess' 1996 "conviction *initially* rendered him disqualified to possess firearms and ammunition, he later pled guilty to 12 felonies that had nothing to do with his status as a convicted felon and were, instead, firearms violations that were not status offenses." G. Br. 19. This argument misunderstands the facts leading to Pruess' prior convictions. While Pruess was convicted in 1999 of 12 felony counts that did not include as an element his status as a felon, each of those counts was based on Pruess' lack of a license to sell explosives and firearms. See Op. Br. 10-11; JA 133, 165-66, 434k-434q. Before his 1996 conviction, Pruess had multiple firearms licenses and had legally collected the items that were the subject of the 1999 convictions; he lost his licenses as the result of the 1996 conviction and was charged when he tried to

10

sell parts of his collection after his initial conviction.  Op. Br. 4, 9-10.  These convictions, although not status offenses, still resulted from his initial, invalid conviction.

**B.    Evidence in the Record Demonstrates that Pruess Relied on Legal Advice that His Post-Conviction Motions Attacking His 1996 Conviction Would Invalidate His Subsequent Pleas.**

The government also contends that there is no evidence in the record supporting Pruess' contention that he only pled guilty in 1999 because his lawyer advised him that his post-conviction motion seeking relief from the 1996 conviction would be granted and would invalidate his pleas.  G. Br. 19.  This is incorrect.  Pruess' affidavit submitted to the district court in support of his *coram nobis* petition is part of the record in this case.  JA 165-67.  In that affidavit, Pruess stated that his previous counsel advised him "that the habeas petition would likely be successful and would invalidate the pleas to the second and third indictments." JA 166.

**C.    Pruess' 1997 Indictment Indicates that 60 mm Mortar Rounds are Explosives, Not Destructive Devices.**

The government asserts that "there is no evidence in the record that the 60 mm mortar round he was convicted of transferring unlawfully does not constitute a 'destructive device' for purposes of 26 U.S.C. § 5861(e)," because Agent Campbell testified that a 40 mm round is not a destructive device without a launcher and did not specifically refer to a 60 mm round.  G. Br. 20.  Although

11

Agent Campbell testified about a 40 mm round, the 40 mm and 60 mm rounds both require a launching system in order to be armed and used as a weapon, and the record contains evidence of this. JA 167. And although Campbell subsequently recanted his testimony, when the government charged Pruess with weapons offenses in 1997, it specifically classified 60 mm mortar rounds as explosives, not as destructive devices. JA 434k-434l.

All of Pruess' prior convictions are the result of his initial, invalid conviction for possessing a destructive device. Because he has a fundamental, Second Amendment right to bear arms, the government cannot ban his possession of firearms and ammunition absent sufficient justification to satisfy strict constitutional scrutiny of the ban. The government has made no attempt to offer any justification here, and the ban violates Pruess' Second and Fifth Amendment rights.

## CONCLUSION

For the reasons stated in this brief and in Pruess' Opening Brief, this Court should vacate Pruess' conviction and instruct the district court to dismiss the indictment.

12

This, the 4th day of November, 2010.

Claire J. Rauscher, Executive Director
Federal Defenders of
Western North Carolina, Inc.

/s Ann L. Hester
*Ann L. Hester
Peter Adolf
Assistant Federal Defenders
127 W. Trade Street, Suite 300
Charlotte, NC  28202
(704) 374-0720
Counsel for Appellant
*Counsel of Record

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*2,835*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. SR. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>November 4, 2010</u>                    <u>/s/ Ann L. Hester</u>
                                                  *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of November, 2010, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina 28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 4th day of November, 2010, I caused the

required number of bound copies of this Reply Brief of Appellant to be hand-filed

with the Clerk of this Court.

/s/ Ann L. Hester
*Counsel for Appellant*